IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Eric D. Blackwell, ) | Civil Action No. 6:11-1672-TMC-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael McCall, Warden, ) | |
| ) | |
| Respondent. ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## UNDERLYING CASE FACTS

On or about November 23, 2003, in Cherokee County, Chris Allen Riddle was stabbed to death. The petitioner admitted to police that he stabbed Riddle four times. The autopsy revealed the victim had been stabbed 167 times. According to the petitioner, he stabbed Riddle several times in or near his car when Riddle jumped on him (App. 31-33). The victim was carried into the petitioner's grandmother's house, and the victim called 911 himself. When the petitioner or his girlfriend, Jessica Blanton, discovered the victim had called 911, the petitioner or his girlfriend took the phone away from the victim, and the petitioner impersonated the victim to 911, reporting that he was in the McKown's Mountain area of Cherokee County, when in fact, the victim was located in the Limestone Courts in Cherokee County (App. 46-49). In addition to the four stab wounds the petitioner admitted

he inflicted, the victim was stabbed over 163 more times, which the petitioner never fully explained (App. 46-49). The petitioner and Blanton disposed of the body by dumping it in a wooded area of Cherokee County and covering the body with leaves and twigs (App. 23-24, 48-49). The petitioner's mother[1] cleaned up the victim's blood in the petitioner's grandmother's residence (App. 24). The petitioner gave similar testimony at his co-defendant's trial (App. 23-24, 30-32, 45, 47-49). The petitioner had been on probation for assault and battery of a high and aggravated nature for three weeks at the time of the murder (App. 37).

## **BACKGROUND OF THE CASE**

The petitioner is currently confined in Perry Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Cherokee County. The petitioner was indicted at the February 2004 term of the Cherokee County grand jury for murder. He was represented by Thomas E. Shealy.

On May 5, 2005, the petitioner pled guilty to Riddle's murder before the Honorable J. Derham Cole. At the hearing, Judge Cole was informed the petitioner had been evaluated three times by the Department of Mental Health and eventually determined to be competent to stand trial, criminally responsible, and not suffering from any type of mental illness, emotional disturbance, or mental defect that would have prevented him from being able to conform his conduct to the requirements of the law. Judge Cole was provided with a copy of the mental evaluations. After questioning the petitioner extensively regarding the voluntariness of his plea and hearing a recitation of the facts from the Solicitor, to which the petitioner agreed, Judge Cole accepted the petitioner's guilty plea. Sentencing was

---

[1] The petitioner's mother pled guilty to accessory after the fact (App. 24).

deferred on the murder charge until after the trial of the petitioner's co-defendant [2] (App. 1-41, 48)

On December 12, 2005, sentencing was held, and the court was provided with the petitioner's prior criminal record (App. 47-48). In addition to hearing from the victim's family, the court also heard the 911 tape in which the petitioner impersonated the victim, viewed photographs showing the extent of the victim's injuries and of the victim's body as it was uncovered in the wooded area. After hearing from the State, the victim's family, and the defense, Judge Cole sentenced the petitioner to life in prison for the murder (App. 45-58).

On December 20, 2005, the petitioner filed a Notice of Appeal with the South Carolina Court of Appeals. The petitioner perfected his direct appeal by filing a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) with the South Carolina Court of Appeals. The petitioner raised the following issue in his *Anders* brief: "[Petitioner] Blackwell did not receive effective assistance of counsel, where his attorney pleaded him straight-up to murder (and life imprisonment), since the evidence would have shown that he might have been guilty of voluntary manslaughter or possibly not guilty by reason of self-defense" (*Anders* brief 3). The petitioner was represented on appeal by Joseph L. Savitz of the Office of Appellate Defense. Mr. Savitz certified to the court that the appeal was without merit and asked to be relieved as counsel. On October 12, 2007, after a thorough review of the record pursuant to *Anders* and *State v. Williams*, 406 S.E.2d 357 (1991), the South Carolina Court of Appeals dismissed the petitioner's direct appeal and granted appellate counsel's request to be relieved. *State v. Eric Dwayne Blackwell*, Unpublished Op. No. 2007-UP-483 (S.C. Ct. App.2007). The Remittitur was issued on October 30, 2007.

_____

[2] The petitioner's co-defendant, Jessica Blanton, the mother of his child, was tried in the fall of 2005 on two indictments, one charging her with murder and the other charging her with accessory after the fact of murder. The petitioner testified at her trial. The jury convicted Ms. Blanton of accessory after the fact. She received a 13-year sentence (App. 48).

The petitioner filed his first post-conviction relief ("PCR") action on November 1, 2006, while his direct appeal was pending. On May 21, 2007, this PCR application was dismissed without prejudice. The petitioner filed a second PCR action on July 24, 2008. In his application, the petitioner claimed that his counsel was ineffective and that his indictment was invalid. An evidentiary hearing was held on July 30, 2009, at the Spartanburg County Courthouse before the Honorable J. Mark Hayes, Circuit Court Judge. The petitioner was present at the hearing and was represented by Paul MacPhail. Assistant Attorney General Michelle Parsons Kelley represented the respondent. After review of the record below and based on testimony at the hearing, the PCR court dismissed the action with prejudice on November 4, 2009.

In its order of dismissal the PCR court summarized the testimony at the evidentiary hearing (App. 109-11). The court noted that the petitioner testified his attorney was ineffective. The petitioner testified his attorney did not discuss with him the co-defendant's statement[3] or the book of torture belonging to the co-defendant until after his guilty plea (App. 76, 78, 80). The petitioner further testified his attorney told him he would get a 30-year sentence if he entered a guilty plea to murder (App. 81)

The PCR court further noted that on cross-examination, the petitioner admitted telling the guilty plea judge he was satisfied with his attorney and that he was guilty of the crime. The petitioner acknowledged telling the court at his guilty plea that he was entering his plea freely and voluntarily and that he had not been threatened or promised anything in order to plead. The PCR court noted that at the hearing, however, the petitioner asserted counsel promised him a 30-year sentence in exchange for his plea (App. 109-10).

---

[3] A friend of the petitioner's co-defendant, Blanton, gave police a statement that Blanton told her that she and her boyfriend killed Riddle. The witness stated Blanton told her that she stabbed the victim 163 times, and the petitioner stabbed him four times. The witness may have later recanted the statement before trial, although it is not clear in the record (App. 52).

The petitioner's defense attorney, Thomas Shealy ("Counsel"), also testified at the PCR hearing (App. 91-105). Counsel testified he met with the petitioner on at least ten occasions and that he had procured three mental evaluations, which all found the petitioner competent. The court noted Counsel testified he prepared the case for trial for approximately a year and had reviewed the entire discovery file with the petitioner on multiple occasions. Specifically, Counsel testified he informed the petitioner about the co-defendant's self-incriminating statement, as well her book on torture, and they discussed this evidence prior to the petitioner's eventual plea (App. 93-94, 110-11).

At the PCR hearing, Counsel also testified he attempted to negotiate a plea on the petitioner's behalf to a lesser included offense or a 30-year sentence, but he was unsuccessful. The Solicitor approached Counsel and asked if the petitioner would testify against his co-defendant at her trial. Counsel told the Solicitor he did not believe the petitioner would be interested, but he promised to convey the offer (App. 94). When Counsel conveyed the offer, he testified he informed the petitioner he could be sentenced anywhere from 30 years to life as there was no sentencing reduction offer from the State. Counsel testified he advised the petitioner the plea deal and his testimony against the co-defendant gave him the best chance of receiving a 30-year sentence, though there was no guarantee, and he could still receive a life sentence. Counsel testified it was the petitioner's decision to plead guilty and that he fully informed the petitioner regarding consequences of his plea (App. 94-95, 110-11). The petitioner admitted he understood the consequences of his decision to plead guilty at his plea hearing (App. 36).

Counsel testified he had prepared a defense for trial, but it was not a winning defense. Counsel testified he believed the petitioner would have been found guilty at trial and would have received a life sentence. Despite this, Counsel was surprised the petitioner decided to plead guilty. Counsel testified the petitioner repeatedly maintained his story that the victim jumped on the knife, and he did not know how the other 160- plus stab wounds

5

occurred. The petitioner, however, admitted that he caused several of the stab wounds but not the 160- plus wounds. (App. 101, 111).

The PCR court also noted that testimony indicated that after the petitioner's guilty plea and prior to sentencing, the petitioner met privately with the prosecution without counsel present. There was nothing in the record that showed the petitioner ever waived his right to have his lawyer present, but counsel allowed the petitioner to meet with the State's attorney. Counsel testified that he told the petitioner to call him or to stop talking if he felt uncomfortable during his meeting with the prosecutor (App. 103-04).

Before ruling on the petitioner's ineffective assistance claim, the PCR court stated the proper standard of review pursuant to *Butler v. State*, 334 S.E.2d 813 (S.C. 1985)(applicants bears the burden of proving the allegations in their applications) and *Strickland v. Washington*, 466 U.S. 668 (1984) (counsel's performance is measured by its reasonableness and prejudice against the applicant) (App. 111-12). The PCR court pointed out that with respect to guilty plea counsel, the applicant must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial (App. 112 (citing *Hill v. Lockhart*, 474 U.S. 52 (1985)).

After reviewing the testimony and weighing the credibility of counsel and the petitioner and reviewing the record, the PCR court made the following findings of fact pursuant to S.C. Code Ann. § 17-27-80 (1985). The court found Counsel's testimony was credible, but also the petitioner's testimony was credible in parts. The court found Counsel's representation regarding petitioner's allegation about his co-defendant's statement and the book of torture was reasonable. As a result, this allegation was denied and dismissed with prejudice. The PCR court also dismissed and denied the petitioner's allegation that his counsel promised him a 30-year sentence in exchange for this plea and testimony against the co-defendant (App 113-14).

The PCR court concluded it was beyond the parameters of reasonable conduct for a lawyer for a defendant facing a life sentence to allow his client to be questioned privately by the State when the client has not requested the lawyer's absence or waived his right to have his lawyer present. However, the PCR court found this meeting occurred after the guilty plea and did not affect the petitioner's decision to enter the plea itself. Moreover, the court found the petitioner failed to prove his meeting with the Solicitor prejudiced his later sentence. Therefore, this allegation was denied and dismissed (App. 114-15)

The PCR court found the petitioner's allegation that his plea was involuntary without merit. The PCR court pointed out that to be knowing and voluntary, a plea must be entered with a full understanding of the charges and the consequences of the plea (App. 112-13 (citing *Boykin v. Alabama*, 395 U.S. 238 (1969) and *Dover v. State*, 405 S.E.2d 391 (S.C. 1991)). Further, the PCR court stated that because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed (App. 113 (citing *Blackledge v. Allison*, 431 U.S. 63 (1977)). Therefore, statements made during a guilty plea should be considered conclusive unless a criminal inmate presents valid reasons why he should be allowed to depart from the truth of his statements (App. 113 (citing *Crawford v. United States*, 519 F.2d 317 (4th Cir. 1975) and *Edmonds v. Lewis*, 546 F.2d 566 (4th Cir. 1976)). The PCR court found the record conclusively refuted this allegation based on the following record (App. 115). The plea judge informed the petitioner of the maximum penalty of each of his charges, informed him of his right to remain silent, and informed him of his right to a jury trial and other associated jury trial rights. The petitioner also affirmed that no one promised him anything, threatened him, or mistreated him in order to coerce a plea. The petitioner also stated that he was pleading guilty freely and voluntarily. The petitioner

further informed the plea judge that he was satisfied with the services of his lawyer (App. 115).

Accordingly, the PCR court found that the petitioner had failed to carry his burden of proving that his guilty plea was not freely and voluntarily entered. The petitioner showed no reason why he should be allowed to depart from the truth of the statements he made during his guilty plea hearing, and the PCR court found his testimony at the PCR hearing lacked credibility. Therefore, this claim was denied and dismissed (App. 115).

The PCR court found that any and all other allegations raised at the hearing or in the application were without merit and that he had not shown that his counsel was ineffective under the *Strickland* test. Based on all the foregoing, the PCR court denied and dismissed the petitioner's PCR application with prejudice (App. 116).

The petitioner appealed from the denial of his PCR application by way of a *Johnson* Petition to the South Carolina Supreme Court. The petitioner was represented in the appeal by Robert M. Pachak of the Office of Appellate Defense. In the *Johnson* Petition, the petitioner raised the following issue to the South Carolina Supreme Court: "Whether defense counsel was ineffective in his representation of the petitioner?" (*Johnson* Petition 2). Mr. Pachak certified to the court that the appeal was without merit and asked to be relieved as counsel. The petitioner filed a *pro se* Response to the *Johnson* Petition.[4]

---

[4] In his *pro se* Response to the *Johnson* Petition, the petitioner argued his trial counsel was ineffective in not having an independent psychiatric evaluation and a *Blair* hearing regarding his competency. The petitioner conceded this issue was not specifically raised to or argued at PCR (*Pro Se* Response to *Johnson* Petition 11). Furthermore, this issue was not addressed in the PCR Court's Order of Dismissal, and the petitioner did not file a Rule 59(e) Motion to have this issue addressed. Therefore, it was waived and could not be addressed by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007)(failure to file a Rule 59 Motion to Alter or Amend to have the PCR Court address an issue not addressed in the Order of Dismissal, results in waiver of the issue on appeal). The petitioner also argued on appeal that his plea was involuntary because counsel was ineffective in failing have an independent psychiatric evaluation and failing to have a competency hearing. Again, the petitioner did not raise this issue below, and it was not addressed in the PCR court's Order of Dismissal; therefore, it could not be addressed on appeal. *Id.* The petitioner also argued that his guilty plea was involuntary because of his mental health issues. However, the petitioner did not argue to the PCR court that he was incompetent at the time of his guilty plea, and he presented no expert testimony that he was incompetent at the time he pled guilty.

On April 21, 2011, the South Carolina Supreme Court, after careful consideration of the entire record as required by *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), denied the petition and granted collateral appellate counsel's request to withdraw. The Remittitur was issued on May 12, 2011.

The federal habeas petition followed on July 7, 2011. The petitioner alleges as follows in the petition now before this court:

> Ground one: Ineffective Assistance of Trial Counsel
>
> Supporting facts: (1) Counsel mislead Petitioner to believe by cooperating-pleading guilty and providing testimony against co-defendant he would receive the minimum sentence of thirty (30) years imprisonment rather than "Life": (2) Counsel abandoned the Petitioner by allowing the prosecuting Solicitor to meet with Petitioner alone (without counsel present) on several occasions while sentencing was still pending.
>
> Ground two: "Involuntary, Unknowing, and Unintelligent Guilty Plea."
>
> Supporting facts: (1) Petitioner was mislead and induced to plead guilty by sentence information provided by trial counsel - and - by the Plea Judge's language relative to deferring sentence until after he co-operated by testimony for the State. (2) Being compelled to plead guilty without a full and complete understanding and knowledge of exculpatory evidence and available defenses based upon the facts and evidence known to defense counsel and the State.

(Federal pet. 5-8).

On September 9, 2011, the respondent filed a motion for summary judgment. By order filed on September 12, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th

---

Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  The petitioner filed his response in opposition on January 25, 2012.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v.*

> *French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

### *Procedural Bar*

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir.1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17–27–10, *et seq.*; S.C. Code Ann. § 17–27–90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[5] Furthermore, strict time deadlines

---

[5]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling

govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17–27–45.

In filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir.1983).

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim

---

prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986). "Cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (quoting *Murray*, 477 U.S. at 488). Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir.1995). In order to demonstrate a miscarriage of justice, a petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Ground One is not procedurally barred as the issues were raised to and ruled upon by the PCR court. Ground Two is an involuntary guilty plea claim. To the extent the petitioner is raising the same involuntary guilty plea claim he raised and was ruled on by the PCR court, this ground is not procedurally barred. However, the petitioner's claim regarding the plea court's "language relative to deferring sentence until after he co-operated by testimony for the State" is procedurally barred (*see* federal pet. 6). The petitioner did not raise this claim in his direct appeal or in his PCR action. Therefore, this ground was procedurally defaulted in state court and cannot be considered on federal habeas review.

Further, the petitioner has shown no cause for procedurally defaulting on this issue, nor can he show actual innocence. Clearly, based on the record of the guilty plea, including the petitioner's admission that he stabbed the victim four times, the evidence that he impersonated the victim to the 911 operator and gave a false location for the victim, that he could not explain the fact that the victim was stabbed another 163 times, and that he participated in disposing of the victim's body in a secluded location, the petitioner cannot establish that the purported errors of which he complains probably resulted in the conviction of an innocent person. Accordingly, this portion of Ground Two is procedurally barred.

**Ground One**

In this ground, the petitioner claims that (1) his attorney was ineffective because he misled the petitioner to believe that, by cooperating, he would receive the 30-year minimum sentence, and (2) his attorney abandoned him by allowing him to meet with the prosecutor without counsel present on several occasions while sentencing was still pending.

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690. With regard to guilty pleas, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The review of ineffective assistance of counsel claims in federal habeas is centered upon whether the state court decision was reasonable. 28 U.S.C. § 2254(d). Moreover, each step requires deference – deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

The PCR court directly addressed both of these issues and found them to be without merit. The PCR court found Counsel's testimony was credible, and the petitioner's testimony was "credible in parts" (App. 113). That credibility determination is entitled to deference by this court. *Wilson v. Ozmint*, 352 F.3d 847, 858-59 (4th Cir. 2003).

The petitioner's testimony was that Counsel promised him a 30-year sentence if he pled guilty and testified against his co-defendant. Counsel disputed this under oath. Counsel's testimony was that he never promised the petitioner he would receive a 30-year sentence rather than life in prison if he pled guilty. He merely informed the petitioner his best chance at receiving a 30-year sentence was if he accepted the State's offer of a straight-up plea to murder, pled guilty, and testified against his co-defendant. Counsel testified he informed the petitioner that he could still receive a sentence from 30 years up to life imprisonment if he pled guilty and testified. Trial counsel also testified he was

surprised when the petitioner accepted the State's offer, which trial counsel felt he was required to communicate to the petitioner. Trial counsel testified he had always been preparing for trial (App. 91-105).

Counsel's testimony is also supported by the guilty plea transcript. The petitioner told the plea judge that no one had promised him any specific sentence if he pled guilty. He also informed the plea court that he understood he could receive anywhere from 30 years up to life imprisonment in the discretion of the court (App. 16).

The PCR court cited the appropriate legal standard and gave weight to Counsel's testimony that he told the petitioner he could receive from 30 years to a life sentence, that the guilty plea was his best chance for a 30-year sentence, but he did not guarantee the petitioner any particular sentence (App. 114; *see* App. 94-95, 104-05). The petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding this issue. The petitioner has also failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination given the evidence and record before it. The PCR court reasonably applied *Strickland* finding that the petitioner had not shown that his counsel's performance was deficient nor that, but for the alleged error, he would not have pled guilty. Accordingly, there is no merit to this ground.

With regard to the petitioner's claim that counsel abandoned him by allowing him to meet with the prosecutor alone, the respondent submits there is no merit to this portion of this ground. This court agrees. The PCR court found the petitioner failed to meet the prejudice prong of *Strickland* because the petitioner met with the prosecutor after his guilty plea and in preparation for his co-defendant's trial. Accordingly, the meeting did not affect petitioner's decision to enter the plea. Moreover, the petitioner failed to prove his meeting with the prosecutor prejudiced his later sentence (App. 114-15).

In the PCR hearing, counsel testified that he allowed the petitioner to meet with the prosecutor after the guilty plea and before the sentencing in preparation for the co-defendant's trial (App. 104). There is no evidence in the record that the prosecutor used

17

anything he learned from the petitioner during any meeting to argue for a greater sentence (App. 42-59).

The PCR court reasonably found, under *Strickland* and *Hill*, that the petitioner failed to show any prejudice regarding his meeting with the prosecutor without his trial counsel being present. The petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding this issue. Further, the petitioner has also failed to show by clear and convincing evidence that the PCR court reached an unreasonable factual determination given the evidence and record before it. Therefore, the petitioner has failed to meet his burden of proof to show he is entitled to federal habeas corpus relief.

### Ground Two

In this ground, the petitioner claims that his guilty plea was involuntary, unknowing, and unintelligent. A guilty plea is constitutionally valid if it "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill,* 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A plea is knowingly and intelligently made if a defendant is "'fully aware of the direct consequences'" of his guilty plea and not induced by threats, misrepresentation, including unfulfilled or unfulfillable promises, or by "'promises that are by their nature improper as having no relationship to the prosecutor's business.'" *Brady v. United States*, 397 U.S. 742, 755 (1970) (quoting *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir. 1957) (en banc)). Because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed. *Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977). Therefore, statements made during a guilty plea should be considered conclusive unless a criminal inmate presents reasons why he should be allowed to depart from the truth of his statements. *Crawford v. United States*, 519 F.2d 347 (4th Cir. 1975), *overruled on other grounds by United States v. Whitley*, 759 F.2d 327, 350 (4th Cir. 1985); *Edmonds v. Lewis*, 546 F.2d 566, 568 (4th Cir. 1976). Here, the petitioner has not shown anything that would

18

overcome the "strong presumption of veracity" carried by his statements at the guilty plea hearing of a voluntary, knowing, and intelligent decision to plead guilty. *See United States v. Morrow*, 914 F.2d 608, 614 (4th Cir. 1990).

The petitioner specifically alleges that he was misled and induced to plead guilty by sentence information provided by Counsel and by the plea judge's language regarding deferring sentence until after he cooperated by providing testimony for the State at his co-defendant's trial. He further contends that he was compelled to plead guilty without a full and complete understanding and knowledge of exculpatory evidence and available defenses based upon the facts and evidence known to defense counsel and the State (federal pet. 5-8).

The PCR court found that the petitioner's testimony at the hearing on this issue lacked credibility (App. 115). As discussed above, Counsel testified he did not promise the petitioner he would receive a 30-year sentence. He also testified he explained to the petitioner that if he pled guilty he could receive 30 years to life imprisonment (App. 93-95). He told the petitioner that the plea was his best chance to receive a lighter sentence, but he "emphasized that he could get life" (App. 104). Counsel also testified at the PCR hearing that he had a document in his file, which was made contemporaneous with his communicating the offer to the petitioner, that showed he explained to the petitioner his potential sentence (App. 94-95). The guilty plea transcript corroborates and supports Counsel's sworn testimony. The petitioner informed the plea court that he had not been promised a specific sentence by anyone and that he was aware his sentence could be "anywhere from 30 to life" (App. 16). The prosecutor stated on the record there were no negotiations as far as sentencing (App. 24). The plea transcript also shows the petitioner was evaluated by the Department of Mental Health three times and was determined to be competent to stand trial (App. 19-23). At no time in the proceedings below did the petitioner introduce any evidence that he was incompetent.

The record shows it was the petitioner's decision to plead guilty and cooperate with the hope that he could earn a lesser sentence. The petitioner has failed to show that

the PCR court unreasonably applied clearly established federal law, as determined by the Supreme Court of the United States, or unreasonably determined the facts in light of the evidence presented in the State court proceeding. Accordingly, this portion of Ground Two fails.

Moreover, even if the procedural bar did not apply, there is nothing in the language of the plea judge regarding deferring sentencing until after the petitioner testified against his co-defendant that misled or induced the petitioner into pleading guilty. The guilty plea transcript shows the plea court made clear, and the petitioner fully understood, the potential sentence he faced (App. 16-17). The record shows deferred sentencing is what the petitioner wanted to do after trial counsel made him aware of the prosecutor's offer regarding his cooperation. The petitioner made the decision to plead guilty. After accepting the petitioner's guilty plea, the plea judge specifically stated as follows: "[T]he purpose of deferring sentence is so that I can be aware of any cooperation or assistance that you have provided the State in resolving these cases against other participants or co-defendants. And I will take that into consideration whatever sentence I impose. But you understand your cooperation still does not guarantee you any type of sentence. It is still going to be my discretion." The petitioner responded: "Yes, sir, Your Honor" (App. 38). It is clear from the record that the plea judge did not induce the petitioner's guilty plea by any of his comments. The petitioner was seeking to avoid a harsher sentence by pleading guilty, withholding sentence, and cooperating with the State; this does not render his guilty plea involuntary. Accordingly, this ground is without merit.

In part two of this ground, the petitioner contends that he did not fully understand exculpatory evidence or the defenses available to him, and thus his plea was "involuntary, unknowing, and unintelligent." The record solidly refutes this claim. With regard to the petitioner's claim that the plea was not knowingly and voluntarily entered, the PCR court found trial counsel's testimony was credible and the petitioner's testimony lacked credibility (App. 113-15).

Counsel testified he made the petitioner fully aware of the discovery in the case, including the incriminating statement his co-defendant had made to another person. He testified that he went through the State's evidence with the petitioner a number of times. Counsel also testified he had made the petitioner aware of the book of torture that belonged to his co-defendant that was found by police in the automobile. This information was communicated to the petitioner as they were preparing for trial and prior to his guilty plea (App. 93-94).

Counsel also testified that he informed the petitioner of the lesser included offenses of voluntary and involuntary manslaughter and the defense of self-defense. The petitioner's testimony at his PCR hearing that he was not informed of lesser included offenses and the defense of self-defense was not credible. Counsel testified that he was preparing for trial and was going to argue for a lesser included offense and argue self-defense for his client, but the petitioner decided to plead guilty (App. 91-105).

The guilty plea transcript supports Counsel's credible testimony. The plea court fully reviewed with the petitioner the possibility of self-defense and lesser included offenses such as voluntary manslaughter and involuntary manslaughter (App. 30-37). The petitioner admitted he had discussed lesser included offenses with Counsel and Counsel had explained the elements of each (App. 36). The petitioner also admitted to the plea court that he discussed self-defense with his attorney and that, by pleading guilty, he understood he would be giving up the right to present any defenses or argue to the jury for a lesser included offense (App. 30-37). The petitioner told the plea court that he and his attorney discussed the possibility of defenses and that he had no defense to the charge (App. 10). The petitioner also told the plea court that he was fully satisfied with counsel's representation of him and that he understood the consequences of his plea (App. 11, 36-37).[6]

---

[6] The petitioner also told the plea court that he had discussed with Counsel the mental evaluation and the results (App. 22-23).

The PCR court reasonably found the allegation that the petitioner's guilty plea was involuntary was without merit and that the record conclusively refuted this allegation (App. 112-16). The plea judge informed the petitioner of the maximum penalty of his charge, his right to remain silent, and his right to a jury trial and other associated jury trial rights (App. 1-41). The petitioner admitted to the plea court that Counsel had explained to him the elements of the offense of murder (App. 9). The petitioner informed the plea court that counsel had explained to him what the State would have to prove in order to convict him of murder (App. 9-10). He also affirmed no one promised him anything, threatened him, or mistreated him in order to coerce a plea, and that he was pleading guilty freely and voluntarily (App. 16-17)

The PCR court found that, pursuant to *Boykin v. Alabama*, 395 U.S. 238 (1969) and *Blackledge v. Allison*, 431 U.S. 63 (1977), the petitioner had failed to carry his burden of proving that his guilty plea was not freely and voluntarily entered. The petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding this issue. The petitioner has also failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination. As a result, the petitioner has failed to meet his burden of proof to show he is entitled to federal habeas corpus relief.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 12) be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

July 19, 2012
Greenville, South Carolina

22

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).